UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHISN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>MICHAEL BERNARD GOLDBERG,<br><br>　　　　　Defendant. | 4:18-CR-40119-01-KES<br><br><br>ORDER DENYING MOTION FOR RELIEF UNDER THE FIRST STEP ACT |

Defendant, Michael Bernard Goldberg, filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 63. Plaintiff, the United States of America, opposes the motion. Docket 67. For the following reasons, the court denies defendant's motion for compassionate release.

## BACKGROUND

On August 20, 2018, Goldberg pleaded guilty to conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846. Dockets 40, 46. On October 21, 2019, the court sentenced Goldberg to 132 months in custody followed by five years of supervised release. Docket 55; Docket 56 at 2-3. Goldberg's sentence was later reduced to 66 months in custody. Docket 62 at 2. His projected date of release is March 29, 2024. Docket 66 at 207.

Goldberg is incarcerated at FCI Milan, a low security federal correctional institution in Milan, Michigan. Docket 63-1 at 2; *FCI Milan,* Fed. Bureau of Prisons, (last visited Jan. 5, 2022). The total population at FCI Milan is 1,527 persons. *Id.*

In support of his motion, Goldberg argues the current circumstances at FCI Milan and his rehabilitation efforts while in custody, coupled with his two-prior

1

positive COVID-19 diagnoses, warrant early release. Docket 63 at 2-3; Docket 63-1 at 1. Goldberg submitted a request for compassionate release to the warden on September 4, 2021. Docket 63-1 at 1. On October 25, 2021, Goldberg filed a pro se motion with the court for relief under the First Step Act. Docket 63.

## DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). In 2018, Congress passed the First Step Act (FSA). Pub. L. No. 115-391, 132 Stat. 5194 (2018). In pertinent part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit incarcerated defendants in certain circumstances to file motions with the court seeking compassionate release. Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a reduction in sentence must take into consideration the 18 U.S.C. § 3553(a) sentencing factors and be consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's policy statement, which was adopted before the FSA was passed, requires both "extraordinary and compelling reasons" to warrant a sentence reduction and that the defendant not pose a danger to the safety of others." USSG § 1B1.13(1)-(2) (Nov. 2018). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Goldberg argues that the global COVID-19 pandemic, his prior COVID-19 diagnoses, his rehabilitation efforts, and the current conditions of FCI

Milan satisfy the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 63 at 2-3; Docket 70 at 7-9. Goldberg requests a sentence reduction of twelve months. Docket 63 at 3.

## I. Administrative Exhaustion

Previously, only the BOP Director had the authority to bring a compassionate release motion on a defendant's behalf. With the enactment of the FSA, however, Congress has now permitted courts to grant compassionate release on motions filed by defendants "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

On September 4, 2021, Goldberg submitted a Request to Staff form asking for a reduction in sentence due to COVID-19. Docket 63-1 at 1. Goldberg did not indicate whether he received a response from the warden as required by the statute. However, given that the 30-day waiting period required by 18 U.S.C. § 3582(c)(1)(A) has lapsed, the court concludes that Goldberg's motion is ripe for review on the merits.

## II. Extraordinary and Compelling Reasons

The Sentencing Commission was directed by Congress to describe what "should be considered extraordinary and compelling reasons" for compassionate release and fashion "the criteria to be applied and a list of specific examples." *See* 28 U.S.C. § 994(t). The Sentencing Commission did so by limiting "extraordinary and compelling reasons" to four categories. USSG § 1B1.13, cmt. n.1(A)-(C) (2018). The four categories pertain to a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in

combination with the amount of time served, and (4) compelling family circumstances. *Id.* A fifth catch-all category also exists for an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the BOP. USSG § 1B1.13, cmt. n.1(D).

The court has detailed the governing law and the analysis it uses when confronted with a compassionate release motion in many previous orders. *E.g., United States v. Shields*, 3:07-CR-30106-01-KES, 2021 WL 765001, at *2-3 (D.S.D. Feb. 26, 2021); *United States v. Muhs*, 4:19-CR-40023-02-KES, 2021 WL 534517, at *2-3 (D.S.D. Feb. 12, 2021); *United States v. Adame*, 4:18-CR-40117-05-KES, 2020 WL 7212096, at *2-3 (D.S.D. Dec. 7, 2020); *United States v. Nyuon*, 4:12-CR-40017-01-KES, 2020 WL 7029873, at *2-3 (D.S.D. Nov. 30, 2020). The court has assumed the policy statements still apply to compassionate release motions brought under the FSA and utilizes USSG § 1B.13, Application Notes 1(A)-(D) to guide its analysis. *See, e.g., Muhs*, 2021 WL 534517, at *3.

Goldberg contends that the ongoing COVID-19 pandemic in combination with the current modified operations of FCI Milan, his participation in the Residential Drug Abuse Program, and his prior COVID-19 diagnoses satisfy the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 63 at 2-3; Docket 70 at 2-3, 7-9. Goldberg argues that his circumstances fall under the medical conditions category, USSG § 1B1.13 Application Note 1(A), and the catch-all provision, USSG § 1B1.13 Application Note 1(D). Docket 70 at 8-9.

Assuming the court's discretion to consider compassionate release is at least as broad as the outdated policy statement of the Sentencing Commission, Goldberg has failed to show that his reasons for release rise to the level of "extraordinary and

compelling" circumstances justifying a reduction in sentence.

### A. Medical Conditions Category, Note 1(A)

As relevant here, the medical conditions category applies when the defendant is suffering from a serious physical or medical condition that substantially diminishes his ability to provide self-care within a correctional facility and from which he is not expected to recover. USSG § 1B1.13 cmt. n. 1(A)(ii)(I).

COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. The Centers for Disease Control and Prevention (CDC) updated its current understanding of these risks. *See People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (Dec. 14, 2021). The CDC states individuals with the following conditions are more likely to become severely ill from COVID-19: cancer, chronic kidney disease, chronic liver disease (such as alcohol-related liver disease, non-alcoholic fatty liver disease, autoimmune hepatitis, and cirrhosis), chronic lung diseases (including moderate to severe asthma, bronchiectasis, bronchopulmonary dysplasia, chronic obstructive pulmonary disease (COPD), interstitial lung disease, cystic fibrosis, pulmonary embolism, and pulmonary hypertension), dementia or other neurological conditions, diabetes (type 1 or type 2), down syndrome, heart conditions (such as heart failure, coronary artery disease, cardiomyopathies, or hypertension), HIV infection, immunocompromised state, mental health conditions (having mood disorders, including depression, and schizophrenia spectrum disorders), being overweight and obesity, pregnancy, sickle cell disease or thalassemia, being a current or former smoker, having a solid organ or blood stem cell transplant, history of stroke or cerebrovascular disease, substance abuse

disorders (such as alcohol, opioid, or cocaine use disorder), and tuberculosis. *Id.*

The court has reviewed the medical records submitted in this case. Goldberg's medical conditions include alcohol use disorder, cannabis use disorder, stimulant related disorder, anxiety disorder, and two prior COVID-19 diagnoses. Docket 66 at 66-67, 141-142. According to his medical records, his substance disorders are classified as mild by his providers. *Id.* He is prescribed buspirone to manage his anxiety. Docket 66 at 2, 148. His anxiety is the only condition that is actively being treated with medication. Docket 66 at 40. Additionally, his records reflect few clinical visits, prescribed medications, and medical conditions. *See generally* Docket 66. This leads the court to believe that Goldberg is adequately healthy.

Although Goldberg does suffer from medical conditions recognized by the CDC, the court has required a more particularized showing of a risk of serious illness from COVID-19 when evaluating compassionate release motions. Goldberg's substance abuse disorders and his anxiety does not prevent him from providing self-care in a correctional facility setting, and his medical conditions do not amount to extraordinary and compelling circumstances.

Furthermore, Goldberg has already recovered from COVID-19. *Id.* at 35. On July 18, 2020, Goldberg tested positive for COVID-19 and was placed in isolation. *Id.* at 91, 94. During his period of isolation, Goldberg was seen by his provider and reported mild symptoms of COVID-19. *Id.* at 74-85, 88, 91, 94. His symptoms included fatigue, body aches, headache, and pain while breathing. *Id.* As a result, he was prescribed ibuprofen and acetaminophen to manage his symptoms. *Id.* at 86. Goldberg was advised on access to health care, infection prevention/control, hand washing, increasing fluids for hydration status, symptom control/relief, and his plan of care. *Id.* at 75-84. He completed his 14-day isolation on July 31, 2020

after being asymptomatic for 3 days. *Id.* at 74.

Additionally, Goldberg also tested positive on November 18, 2020. Docket 66 at 67. He reported only suffering from a headache and was prescribed ibuprofen to manage his pain. *Id.* at 57, 59, 60-62, 64, 66-67. He was released from isolation on November 28, 2020 after 10 days. *Id.* at 55. On April 2, 2021, Goldberg received his first dose of a Moderna COVID-19 vaccine. *Id.* at 38. He received his second vaccine on April 28, 2021 and achieved full vaccination status on May 12, 2021.[1] *Id.*

Additionally, the COVID-19 pandemic alone is insufficient to warrant early release. The BOP has made significant changes to correctional operations since the pandemic started in early 2020. *See BOP Modified Operations*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (2022). These include sanitary and safety measures, restrictions on movement, and visitation restrictions, among others. *Id.* The BOP has also transferred many thousands of inmates to home confinement. *See Frequently Asked Questions Regarding Potential Inmate Home Confinement in Response to the COVID-19 Pandemic*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/faq.jsp (last visited Jan. 5, 2022). Since March 26, 2020, to the present, 36,530 inmates have been placed in home confinement. *Id.* These measures have led to a dramatic decrease in the total BOP population, which in turn has increased opportunities for social distancing and reduces the strain on BOP resources.

---

[1] The CDC states that, "Everyone 5 years and older is recommended to receive a primary series of a COVID-19 to be considered fully vaccinated… a primary series consists of: A 2-dose series of an mRNA COVID-19 vaccine (Pfizer-BioNTech or Moderna), or A single-dose COVID-19 vaccine (Johnson & Johnson's Janssen vaccine)." *See Stay Up to Date with Your Vaccines,* Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html (Jan. 5, 2022).

The court believes Goldberg's medical conditions are appropriately managed at FCI Milan, the facility is engaged in appropriate efforts to protect inmates against the spread of COVID-19, and the facility would act to treat any inmate who does contract COVID-19. The fact that FCI Milan had a COVID-19 outbreak does not negate such conclusions. The statistical information for FCI Milan demonstrates a widespread COVID-19 outbreak, but it was not disastrous. *See BOP Modified Operations*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Jan. 5, 2022). There were three deaths as a result, and 215 inmates including Goldberg have recovered. *Id.* The total population at FCI Milan is currently 1,527 persons. *See FCI Milan.* This persuades the court that FCI Milan has acted appropriately to treat inmates who do contract COVID-19. The court believes the facility will continue to appropriately treat inmates who do so.

The BOP's vaccination program for staff and inmates is another protective measure warranting consideration in this stage of the COVID-19 pandemic. The BOP has implemented a COVID-19 vaccination plan to protect inmates and staff and limit the transmission of COVID-19 within the facilities. *See COVID-19*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited January 5, 2022). As of January 5, 2022, 278,583 doses have been administered systemwide. *Id.* At FCI Milan, 209 staff and 1037 inmates were fully inoculated as of January 5, 2022.

These efforts to limit the spread of COVID-19 and protect inmates appear to be working. As of January 5, 2022, the BOP reported 1,736 federal inmates have confirmed positive test results for COVID-19 nationwide. *See id.* There are currently over 135,000 federal inmates in BOP-managed facilities. *Id.*

8

In light of the above, the court finds Goldberg's circumstances do not clear the high bar necessary to warrant compassionate release for "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A)(i).

### B. Catch-all Category, Note 1(D)

The catch-all category in Note 1(D) does not result in a different outcome. The catch-all category allows for release if there are extraordinary and compelling reasons other than, or in combination with, those identified in 1(A) through 1(C). USSG § 1B1.13, cmt. n.1(D). Goldberg claims that he should be considered for a 12-month sentence reduction for his participation in the Residential Drug Abuse Program (RDAP). Docket 63 at 2-3. He informs the court that he does not qualify for a sentence reduction due to him possessing a firearm during the offense, resulting in him being classified as a violent offender. *Id.* Goldberg contests this categorization because he argues that his addiction and his "inability to control impulsive behavior while intoxicated" is what made him violent, not himself as an individual. Docket 70 at 2.

The court finds that Goldberg is a violent offender. While on pretrial release, he was arrested and charged with seven counts of domestic abuse and simple assault. Docket 49 ¶¶ 5, 39. Additionally, his criminal history revealed a prior felony conviction. *Id.* ¶ 34. He was described as someone who always carried a firearm and was seen with a black semi-automatic pistol on his hip. Docket 49 ¶ 11. Goldberg possessed a dangerous weapon during the offense and admitted that his methamphetamine use lead to "paranoia and irrational though[t] process[es], which only aids in aggravating the already serious issues relating to anger and rage." Docket 70 at 1-2. In conclusion, his circumstances do not warrant a sentence reduction, nor does it meet the high bar under the "extraordinary and

compelling" provision under the First Step Act.

### III. Sentencing Factors of § 3553(a)

The 3553(a) sentencing factors further show that compassionate release is not warranted. Goldberg's conviction stems from a conspiracy to distribute a controlled substance. On April 6, 2017, Goldberg admitted to purchasing methamphetamine from "Double" on various occasions. Docket 49 ¶ 10. The amounts varied from gram quantities to larger ounce quantities. *Id.* Law enforcement discovered that Goldberg was purchasing methamphetamine from different distributors, at varying amounts. *Id.* ¶ 11-12. One distributor observed Goldberg with a firearm at each transaction. *Id.* The total amount of drugs attributed to the defendant in the conspiracy was 5.92 kilograms of methamphetamine. *Id.* ¶ 14.

After being arrested for the offense, Goldberg was placed on pretrial release and continued to commit crimes. *Id.* ¶¶ 5-7. He was arrested and charged with seven counts of domestic abuse and simple assault. *Id.* ¶ 5. Goldberg was later charged with petty theft. *Id.* ¶ 6. Additionally, he tested positive for marijuana the day of his court hearing and was remanded to the custody of the United States Marshals. *Id.* ¶ 7.

The total offense level was calculated as 33 and Goldberg was in criminal history category II. *Id.* ¶¶ 28, 37. The offense had a mandatory minimum of 10 years in custody. *Id.* ¶ 74. The advisory guideline range was 151-188 months. *Id.* ¶ 75. The court sentenced Goldberg below his guideline range to 132 months in custody. Docket 56 at 2. Goldberg's sentence was later further reduced to 66 months. Docket 62 at 2. After careful consideration, the court concludes Goldberg's sentence of 132 months continues to be appropriate for the seriousness

of the crime to which he pleaded guilty.

## CONCLUSION

Goldberg has failed to satisfy the extraordinary and compelling reason standard. Thus, it is

ORDERED that the defendant's motion for compassionate release under the First Step Act (Docket 63) is denied.

Dated January 5, 2022.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE